UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

UNITED STATES OF AMERICA

        v.

DAMARIO JAMES,

                Defendant.

**DECISION AND ORDER**

14-CR-134A

───────────────────────────────

## I. INTRODUCTION

Pending before the Court is a sealed motion (Dkt. No. 322) by defendant Damario James ("James") for release on conditions. James has been in continuous federal custody since July 24, 2014, when agents arrested him on a pre-indictment complaint (Dkt. No. 1). This is James's first formal application for bail; at his detention hearing on August 7, 2014, James waived his right to an immediate detention hearing with a reservation of rights. (Dkt. No. 68.) The Court will avoid divulging too many details of a sealed document, but defense counsel argued in open court that James has provided assistance to the Government and should receive credit for his efforts through release on conditions. James has proposed living with his girlfriend and their children under conditions including home incarceration and co-signing of a bond by his mother and sister. The Government opposes release. The Government appreciates James's assistance but argues that he has accumulated too many felony

convictions and too many bail or probation violations to be trusted with release under any combination of conditions.

The Court held a bail review hearing on December 15, 2015. For the reasons below, the Court denies James's motion.

## II. BACKGROUND

This case concerns allegations that James bought and sold cocaine and cocaine base as a member of the Scheule Boys street gang in the City of Buffalo. In the indictment (Dkt. No. 53), the Government charged James with conspiring "to possess with intent to distribute, and to distribute, 5 kilograms or more of a mixture and substance containing cocaine and 28 grams or more of a mixture and substance containing cocaine base" (*id.* at 2) in violation of 21 U.S.C. § 846. The pre-indictment complaint (Dkt. No. 1) provided more factual information specific to James. In paragraph four of the complaint, the Government listed James as one of three defendants subject to a wiretap order. In paragraphs six through eight, 15, and 18–19, the Government described how informants made numerous controlled purchases of cocaine from James totaling over 300 grams; how James and others used several locations for drug operations; and how James was associated with violent acts such as shootings to defend the gang's operations. In paragraphs 11 and 12, the Government explained how James used techniques intended to thwart surveillance and how James had no significant legitimate income yet lived above his means through illegal proceeds.

In paragraphs 30–33, the Government provided further details of drug transactions directly involving James.

James came into this case with a significant criminal history. Dating back to May 2000, when he was age 17, James has several convictions for violations such as disorderly conduct, infractions relating to aggravated unlicensed operation of motor vehicles, and misdemeanors including driving while intoxicated. James also has several felony convictions. In 2000, James pled guilty to attempted burglary associated with a deadly weapon, a class D felony. In 2003, James was sentenced on a federal felony conviction for possession with intent to distribute cocaine base. In 2005, James pled guilty to attempted criminal possession of a loaded firearm in the third degree, a class E felony. In 2013, James pled guilty to aggravated unlicensed operation of a motor vehicle in the first degree, a class E felony. Across all of his cases, James accumulated seven bench warrants for non-appearance and at least three violations of bail, probation, or supervised release.

Despite his extensive criminal history, James filed the pending motion in the hope of obtaining release. The heart of James's argument is the assistance that he has provided to the Government, though he also argues that he did not realize until recently that he would avoid career offender status. James contends that the elimination of possible career offender status represents a change of circumstances. James again is willing to live with his girlfriend and their children

under home incarceration and would help with child care if allowed to do so. At the bail review hearing, the Court spoke with James's mother and sister, who are willing to co-sign a bond and to post property to secure his release. The Government again opposes James's motion in all respects. The Government was willing to argue the motion without filing response papers and stated at the bail review hearing that James has generated too much of a criminal history to offset simply through assistance.

### III. DISCUSSION

"The Eighth Amendment to the Constitution states that '[e]xcessive bail shall not be required.' U.S. Const. amend. VIII. Consistent with this prohibition, 18 U.S.C. § 3142(b) requires a court to order the pre-trial release of a defendant on a personal recognizance bond 'unless the [court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.'" *U.S. v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). Statutory factors to be considered when assessing non-appearance or danger include the nature and circumstances of the offense charged, the weight of the evidence against the person, the history and characteristics of the person, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

With respect to non-appearance, "the government carries a dual burden in seeking pre-trial detention.  First, it must establish by a preponderance of the evidence that the defendant, if released, presents an actual risk of flight. Assuming it satisfies this burden, the government must then demonstrate by a preponderance of the evidence that no condition or combination of conditions could be imposed on the defendant that would reasonably assure his presence in court."  *Sabhnani*, 493 F.3d at 75 (citations omitted).  "To order detention [based on danger], the district court must find, after a hearing, that the government has established the defendant's dangerousness by clear and convincing evidence. The rules of evidence do not apply in a detention hearing.  Further, the government may proceed by proffer."  *U.S. v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995) (citations omitted).  So long as courts take some measure to assess the reliability and accuracy of prosecutors' information, "a detention hearing is not to serve as a mini-trial . . . or as a discovery tool for the defendant."  *U.S. v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986) (citation omitted); *see also U.S. v. LaFontaine*, 210 F.3d 125, 130–31 (2d Cir. 2000) ("It is well established in this circuit that proffers are permissible both in the bail determination and bail revocation contexts.") (citations omitted).

Here, though defense counsel has done a laudable job casting James's criminal history in the best possible light and enlisting family members to help, the Government has the better view of that history.  At this time, James simply

5

has generated too many convictions and too many release violations to ignore just because he has provided assistance. James's seven prior bench warrants for non-appearance and several prior violations while on release indicate either that he cannot follow conditions of release or that he decides for himself whether and when to comply. *Cf. U.S. v. Barnett*, No. 5:03-CR-243, 2003 WL 22143710, at *12 (N.D.N.Y. Sept. 17, 2003) ("Every sentence of probation or parole requires a defendant to meet judicially imposed conditions, and violations of either are further evidence of a defendant's inability to comply with judicial mandates and supervision. Evidence of new criminal behavior while other charges are pending inevitably leads to the conclusion that a defendant places his own self-interests above that of the community. In turn, the community has a right to expect courts to protect it."); *see also U.S. v. Griffin*, No. CR09-3018, 2009 WL 1220262, at *3 (N.D. Iowa May 4, 2009) ("While Defendant has long ties to the northeast Iowa area, he is currently unemployed. Defendant has an extensive prior criminal record, both as a juvenile and as an adult. Importantly, Defendant has consistently shown that he is unable or unwilling to comply with conditions of release."); *U.S. v. Roman-Monroy*, 608 F. Supp. 2d 86, 88 (D.D.C. 2009) (ordering detention in part because of a bail jumping conviction); *accord U.S. v. Purdue*, No. 14-MJ-2066, 2014 WL 3846067, at *3 (W.D.N.Y. Aug. 4, 2014) (Scott, *M.J.*). The Government also has proffered information about wiretaps, controlled purchases, and surveillance indicating that James has played a

significant role in violent and non-violent operations for the sake of his gang. *Cf. U.S. v. Jackson*, 823 F.2d 4, 7 (2d Cir. 1987) ("As to the weight of the evidence, the government apparently has numerous informants as well as physical evidence to support its charges. Indeed, [defendant] has made no significant attack on the government's proffered evidence."). James's history also indicates regular cocaine and marijuana use prior to his arrest on the pending charges.

Taking together the factors that the Court assesses under 18 U.S.C. § 3142(g), the Court finds both a preponderance of the evidence in favor of a flight risk and clear and convincing evidence of potential danger to the community. The Court will let James's custody status remain unchanged.

## IV. CONCLUSION

For all of the foregoing reasons, the Court denies James's motion for release (Dkt. No. 322).

Defendant will remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

Despite the Court's order of detention, and pursuant to 18 U.S.C. § 3142(i)(3), the Attorney General must afford defendant reasonable opportunity for private consultation with counsel. *See also U.S. v. Rodriguez* ("Rodriguez I"), No. 12-CR-83S, 2014 WL 4094561 (W.D.N.Y. Aug. 18, 2014) (Scott, *M.J.*). Additionally, on order of the Court or on request of an attorney for the

Government, the person in charge of the corrections facility in which defendant is confined must deliver him to a United States Marshal for the purpose of an appearance in connection with a court proceeding in this case.  *See also U.S. v. Rodriguez* ("Rodriguez II"), No. 12-CR-83S, 2015 WL 1120157, at *7 (W.D.N.Y. Mar. 12, 2015) (Scott, *M.J.*) (interpreting 18 U.S.C. § 3142(i)(4) to allow transports to prepare for an oral argument or hearing).

In accordance with 18 U.S.C. § 3142(j), nothing in this Decision and Order will be construed as modifying or limiting the presumption of innocence.

SO ORDERED.

                                                                  /s Hugh B. Scott  
                                                            HONORABLE HUGH B. SCOTT  
                                                            UNITED STATES MAGISTRATE JUDGE

DATED: December 18, 2015